**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                         **MEMORANDUM OF LAW & ORDER**
                                  Criminal File No. 05-333 (MJD/RLE)

(1) GARRICK EDWARD LAWRENCE,

        Defendant.
_____

Erica H. MacDonald, Assistant United States Attorney, Counsel for Plaintiff.

John S. Hughes, Counsel for Defendant.
_____

## I.    INTRODUCTION

The above-entitled matter comes before the Court upon the Report and Recommendation of Chief United States Magistrate Judge Raymond L. Erickson dated January 10, 2006.  Defendant Garrick Edward Lawrence filed timely objections to the Report and Recommendation.  The Government filed a Memorandum in Concurrence with the Report and Recommendation.

Pursuant to statute, the Court has conducted a de novo review of the record.  28 U.S.C. § 636(b)(1); Local Rule 72.1(c).  Based on that review the Court adopts in part and modifies in part the Report and Recommendation dated

1

January 10, 2006.

## II.   FACTUAL BACKGROUND

The Court adopts the facts as set forth in Part I & II of the Report and Recommendation.

## III.   DISCUSSION

### A.   Suppression of Evidence Obtained Pursuant to the Warrantless Search

In Part III (A) of the Report and Recommendation, the Magistrate Judge recommends that Defendant's motion to suppress evidence found in the search of the Defendant's home be denied on the grounds that the officers' search was permissible under the "public safety" exception to the warrant requirement.  For the reasons that follow, the Court finds that the officers' search exceeded the scope of the public safety exception.

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Constitutional protection of the privacy of the home requires that  "a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" Payton v. New York, 445 U.S. 573, 586 (1980) (citing Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971)); See also Minnesota v. Olson, 495 U.S. 91, 95

2

(1990).

Exigent circumstances may permit a warrantless search of a home under the "public safety" exception, which permits an officer to search for or seize a dangerous weapon or instrumentality based on the officer's legitimate concern for the safety of the public or themselves.  United States v. Janis, 387 F.3d 682 (8th Cir. 2004) (holding that concern for safety of others allowed police to enter residence, where they discovered firearms in plain view); United States v. Vance, 53 F.3d 220, 222 (8th Cir. 1995) (noting that a legitimate concern for safety of law enforcement officers or others constitutes exigent circumstances); United States v. Antwine, 873 F. 2d 1144, 1147 (8th Cir. 1989) (holding that search for firearm was permissible where officers witnessed defendant in possession of firearm and planned to leave children unattended in the home); See also New York v. Quarles, 467 U.S. 649, 656 (1984) (recognizing public safety exception to Fifth Amendment privilege against self-incrimination); Warden v. Hayden, 387 US 294, 298-299 (1967) ("The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others.").

In evaluating whether the warrantless entry was justified by exigent circumstances, we consider the circumstances that confronted the police at the time of the entry and apply an objective standard to evaluate the reasonableness

of the assertion that exigent circumstances justified a warrantless entry.  United States v. Leveringston, 397 F.3d 1112, 1116 (8th Cir. 2005); United States v. Morales, 737 F.2d 761, 764 (8th Cir.1984); United States v. Selberg, 630 F.2d 1292, 1295-96 (8th Cir.1980).  The Court must determine whether the officers had an objectively reasonable belief that exigent circumstances justified immediate entry of Defendant's home, without a warrant.  Leveringston, 397 F.3d at 1116 (citations omitted).

In this case, the Red Lake Tribal Police Department received an urgent call from Gwen Lawrence, reporting that Defendant was intoxicated and in possession of a loaded firearm, that there was blood on the wall of the house, and that there was a possibility that other people were in the house.  Tr. at 16:2-3.  The officers who responded to the call met with Gwen Lawrence before approaching Defendant's home.  Upon arriving at Defendant's residence, the officers used the public address system to direct Defendant to come out of the house.  Receiving no response, the officers entered the home.  Tr. at 21:20-25.  The Court concludes that Defendant's lack of response to the directions of police officers, coupled with Gwen Lawrence's report and meeting with the responding officers, justified the officers' entry of the home for the limited purpose of the making sure no one in the house was injured.  Janis, 387 F.3d at 687-88.

However, the exigent circumstances that allowed the officers to enter the

home for the purpose of protecting public safety ceased to exist once the officers verified that there was no one else in the home, injured or hiding.  As the police officers had immediately detained and handcuffed Defendant upon entering the home, and the search which produced the firearm was conducted while Defendant was in the back of the officer's squad car, the search should have been restricted to a sweep for injured and hiding persons in the home.  Although the public safety exception to the warrant requirement permitted the officers to enter the home for the limited purpose of checking on the safety of those in the home, the officers were not permitted to search for weapons or contraband without first obtaining a warrant.

The Magistrate Judge relies on the <u>Antwine</u> decision in recommending denial of the motion to suppress evidence obtained pursuant to the warrantless search.  <u>United States v. Antwine</u>, 873 F.2d 1144.  However, in <u>Antwine</u>, the officers had direct knowledge of the presence of a weapon in the home.  In that case, the officers had seen the defendant brandishing a firearm just before they conducted their warrantless search of the home.  The <u>Antwine</u> decision also turned on the fact that during a protective sweep of the house, the officers discovered two young children and decided to leave the children alone in the home.  The officers searched for the weapon for the limited purpose of assuring the safety of the unsupervised children.  Significantly, the <u>Antwine</u> court

distinguished the case on the presence of unsupervised children in the home; in rejecting defendant's reliance on the Sixth Circuit decision in United States v. Morgan, the Antwine court noted that Morgan "did not involve, as this [case] does, the threat to the safety of unsupervised children posed by the presence of a loaded weapon in their home." Antwine, 873 F.2d 1147 n. 4. (citing United States v. Morgan, 743 F.2d 1158 (6th Cir. 1984).

In this case, the officers did not see a firearm when they arrived at the residence and the firearm was not in plain view when they entered the house. Most significantly, there were no other people in the house aside from Defendant. The children who resided at the home were not present, and there was no sign of any danger to anyone residing in the home.  The officers could have secured the home and waited to obtain a search warrant.  Segura v. United States, 468 U.S. 796, 810 (1984) (holding that when exigent circumstances do not compel immediate warrantless search, police can secure the residence while waiting for a search warrant).

### B.    Suppression of Evidence Seized Pursuant to Arrest

In Part III (B) of the Report and Recommendation, the Magistrate Judge recommends that Defendant's motion to suppress evidence found pursuant to his arrest be denied on the grounds that probable cause justified the arrest of Defendant.  For the reasons that follow, the Court finds that the officers did not

have probable cause to arrest Defendant.

The police may arrest a suspect upon a showing of probable cause. Determining probable cause to arrest requires consideration of whether "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." United States v. Taylor, 106 F.3d 801, 803 (8th Cir. 1997) (quoting Beck v. Ohio, 379 U.S. 89, 91(1964)).

However, evidence seized during an illegal search cannot be used as the basis for an arrest. "Justify[ing] the arrest by the search and at the same time . . . the search by the arrest," just "will not do." Smith v. Ohio, 494 U.S. 541, 543 (1990) (quoting Johnson v. United States, 333 U.S. 10, 16-17 (1948). The Government has not argued that probable cause to arrest existed before the discovery of the firearm. Defendant was eventually arrested on charges of handling a dangerous weapon, disorderly conduct, obstructing legal process and making terroristic threats. As the Court has found that the search for the firearm was illegal, it is axiomatic that the evidence could not be used to constitute probable cause to arrest. Because the officers lacked probable cause to arrest, any evidence seized as a result of that arrest is subject to exclusion.

The Court agrees with the Magistrate Judge's conclusion that the officers

7

acted reasonably in detaining Defendant while they searched the house, based on

a reasonable suspicion that Defendant posed a threat to the officers' safety.

United States v. Maddox, 388 F.3d 1356, 1362-63 (10th Cir. 2004) (holding that

Supreme Court's decision in Maryland v. Buie applies to both protective searches

and protective detentions because the Court's reasoning supports treating

protective sweeps and protective detentions similarly) (citation ommitted).  After

announcing their presence and directing Defendant to exit the house, the officers

saw Defendant lifting a mattress.  Officer Defoe and Corporal Branchaud testified

that Defendant's body movements suggested that he was either hiding or

retrieving something.  Tr. at 21:3-10; 45:9-16.  Considering the officers' testimony,

the nature of the report involved, and Defendant's failure to respond to the

officers' directives, the officers' had a reasonable fear for their own safety,

justifying their detention of Defendant.  Maddox, 388 F.3d at 1365-66.

Next the Court must consider whether, pursuant to the initial detention of

Defendant, the evidence was located as a result of a legitimate protective sweep.

Maryland v. Buie, 494 U.S. 325, 327 (1990).  In Buie, the Supreme Court decided

that law enforcement officers effecting an arrest in a home are permitted to

conduct a limited search of the home to ensure their own safety.  Although a Buie

sweep is normally conducted pursuant to arrest, a recent Eighth Circuit case

applies Buie to a non-arrest situation.  United States v. Waldner, 425 F.3d 514,

517 (8th Cir. 2005).

In either situation, the scope of a Buie sweep is limited.  The Court established a two-prong test for determining whether a protective sweep incident to arrest was constitutionally permissible.  First, "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces adjoining the place of arrest from which an attack could immediately be launched."  Buie, 494 U.S. at 334. Second, the Court permitted a broader sweep "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 337.  In either circumstance, a protective sweep "is not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found."  Id. at 335.  Buie does not allow a search for weapons or contraband.  Waldner, 425 F.3d at 517.

The Court concludes that even if the officers were justified in conducting a protective sweep of the house, the government has failed to prove that the firearm was located where a dangerous person could be found.  The officers' search underneath a mattress exceeded the scope permitted under Buie, as no person could have been hiding in that location.  See United States v. Blue, 78 F.3d 56 (2d Cir. 1996) (holding that search under mattress exceeded permissible scope of

protective sweep); <u>United States v. Ford</u>, 56 F.3d 265 (D.C. Cir. 1995) (holding that search under mattress and beneath window shade exceeded scope of protective sweep).

Finally, the Court must address the Magistrate's suggestion that the Defendant does not have standing to challenge his arrest, as he pled guilty to charges of handling a dangerous weapon in Red Lake Tribal Court.  The Defendant's guilty plea in tribal court does not affect his current motion before this Court, because the plea was constitutionally infirm.  <u>See</u> <u>Elkins v. United States</u>, 364 U.S. 206 (1960) (holding that evidence obtained by state officials in violation of the Fourth Amendment inadmissible in a subsequent federal prosecution); <u>United States v. Ant</u>, 882 F.2d 1389, 1393 (9th Cir. 1989) (holding that although guilty plea was entered in accordance with tribal code and Indian Civil Rights Act, acceptance of guilty plea violated defendant's Sixth Amendment rights, and thus was not admissible in federal prosecution).  In this case, Defendant pled guilty without the advice of counsel.  Thus, Defendant has standing to challenge evidence seized pursuant to his arrest.

## C.    Suppression of Statements of Defendant

In Part III (C) of the Report & Recommendation, the Magistrate Judge recommends that Defendant's motion to suppress statements, admissions, and answers made after his arrest be denied on the grounds that the search and arrest

were permissible under the Fourth Amendment.  Although the Court has

determined that the warrantless search and arrest were unlawful, the Court finds

that the statements were sufficiently attenuated from the illegal search and

seizure to be admissible.

The Court agrees with the Magistrate Judge's conclusion that Defendant

was not in custody while Agent Traurig questioned him, and therefore the

statements may be admitted despite the fact that Defendant was not given a

Miranda warning.  See Miranda v. Arizona, 384 U.S. 436, 444 (1966).  The

ultimate question in determining whether a person is in "custody" for purposes of

Miranda is "whether there is a formal arrest or restraint on freedom of movement

of the degree associated with a formal arrest."  United States v. Czichray, 378 F.3d

822, 826 (8th Cir 2004) (citation omitted).  This determination is a subjective one,

and the Court must consider the totality of the circumstances that confronted the

defendant at the time of questioning.  Id.  The most important factor in

determining custody status is whether the defendant was informed that he was

not under arrest and that he was free to terminate the interview at the time of

questioning.  United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir.1990).  Other

factors a court may consider include whether the suspect possessed unrestrained

freedom of movement during questioning; whether the suspect voluntarily

acquiesced to official questioning or initiated contact with authorities; whether

strong arm tactics or deceptive stratagems were employed during questioning;
whether there was a police-dominated atmosphere; and whether the suspect was
placed under arrest at the termination of the questioning.  Id.

In this case it is clear that Defendant was not in custody when he was
questioned by Agent Traurig, and so a Miranda warning was not necessary.  The
Court finds that Traurig informed Defendant that he was not under arrest, that he
could end the interview at any time, and that he did not have to answer any
questions.  Additionally, Defendant was interviewed at his home, in familiar
surroundings.  United States v. Rorex, 737 F.2d 753, 756 (8th Cir. 1984)  (holding
that fact that interview occurred at the defendant's home weighed against a
finding of custody).  The officers were dressed in plainclothes, and did not display
any weapons. The interview was short, conducted in approximately ten minutes,
and Defendant was not threatened or coerced to answer any questions.  During
the course of the interview, Defendant voluntarily spoke with Traurig without
requesting legal counsel and was not restrained in any way.  Finally, Defendant
was not arrested at the conclusion of the interview. Accordingly, the Court
concludes that Defendant was not in custody during the interview and therefore
Agent Traurig was not required to give Defendant a Miranda warning.

Although the Court has determined that Defendant's statements were not
obtained in violation of Miranda, it must still decide whether those statements are

12

the fruit of the unlawful search and arrest.  Statements made pursuant to an

illegal search or seizure are inadmissible unless sufficiently attenuated from the

illegal search.  See United States v. Yousif, 308 F. 3d 820, 832 (8th Cir. 2002).

The attenuation doctrine is an established exception to the exclusionary rule.

United States v. Watson, 950 F.2d 505, 507 (8th Cir. 1991).  In determining

whether the taint of the illegality is purged pursuant to the attenuation doctrine,

the Court must consider: (1) the temporal proximity between the illegal search or

seizure and the intervening act; and (2) the presence of intervening

circumstances; and (3) the purpose and flagrancy of the official misconduct.  See

United States v. Becker, 333 F.3d 858, 862 (8th Cir. 2003) (citing Brown v.

Illinois, 422 U.S. 590, 603-04 (1975)).

Considering the first attenuation factor, a lengthy period of time elapsed

between the illegal search and arrest and the statements given by Defendant.

Agent Traurig did not speak with the Defendant until over four months after the

illegal search and seizure.  The Court also finds that the third factor of the

attenuation test is met as the Court is satisfied that the officers did not act in bad

faith in executing the search and seizure of Defendant.  The officers arrived at

Defendant's home in response to an emergency call.  The officers had verified the

information by meeting with the caller before investigating the home.  Corporal

Branchaud did not conduct a comprehensive search of the house, but focused his

search on areas of the bedroom where he had seen Defendant "fiddling around." Tr. 49:2.  Branchaud saw Defendant lifting up the mattress before he searched the room, and pushed the mattress with his foot, which revealed the butt stock of the rifle.  Tr. at 49: 7-8.  None of the officers conducted an exhaustive or excessive search of the home that might warrant a finding of bad faith.

In discussing the second factor of the attenuation doctrine, the Eighth Circuit has stressed that the defendant's intervening act must be "sufficiently an act of free will to purge the taint of the preceding detention."  Ramos v. United States, 42 F.3d 1160, 1164 (8th Cir. 1994) (quoting Wong Sun v. United States, 371 U.S. 471, 486 (1963)).  Defendant committed a voluntary act subsequent to the illegal conduct sufficient to purge the taint of the illegality when he consented to speak with Agent Traurig.  Traurig, arriving at Defendant's home dressed in plain clothes and in the company of another officer, identified himself and requested Defendant's consent to speak with him.  Traurig advised Defendant that he was not under arrest, that he could chose whether or not to speak with him, and that he could end the interview at any time.  The interview was conducted outside Defendant's home, beside Traurig's vehicle.  Finally, Traurig testified that there was no indication that Defendant was intoxicated in any way.  Tr. at 63:6-9. Weighing the Becker factors, the Court finds that the statements are sufficiently attenuated from the illegal search and seizure.  Defendant's Motion to Suppress

14

Statements, Admissions, and Answers is denied.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that

1)   The Chief Magistrate Judge's Report and Recommendation dated
     January 10, 2006 [Docket No. 43] is hereby **ADOPTED IN PART** and
     **MODIFIED IN PART** as follows:

     a.   The Court Adopts Parts I and II of the Report and
          Recommendation.

     b.   The Court modifies Part III as set forth above in this
          Memorandum of Law & Order.

2)   Defendant's Motion to Suppress Evidence Obtained pursuant to an
     Illegal Search [Docket No. 26] is **GRANTED**.

3)   Defendant's Motion to Suppress Evidence Obtained Pursuant to an
     Unlawful Arrest [Docket No. 27] is **GRANTED**.

4)   Defendant's Motion to Suppress Statements, Admissions, and
     Answers [Docket No. 28] is **DENIED.**

Dated:   March 22, 2006                          s / Michael J. Davis
                                                 Judge Michael J. Davis
                                                 United States District Court